ELECTRONICALLY FILED
Lonoke County Circuit Court
Deborah Oglesby, Circuit Clerk
2022-Jun-23 17:03:34
43CV-22-376
C23D03 : 17 Pages

## In the CIRCUIT COURT of LONOKE COUNTY, ARKANSAS
### Civil Division

SARAH LEFLAR                                      PLAINTIFF

v.                    Case No. 43CV-22_____

HOME DEPOT INC.                                   DEFENDANT

### Complaint

1.    Plaintiff Sarah Leflar ("Plaintiff") brings this action seeking injunctive and declaratory relief curtailing unlawful business practices related to consumer warranties for products sold by Defendant Home Depot, Inc. ("Home Depot" or "Defendant").

2.    Under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*, retailers—like Defendant—must provide consumers with access to any written warranty for a product costing more than $15, prior to the point of sale.

3.    The purpose of Magnuson-Moss's "Pre-Sale Availability Rule" is to ensure that consumers could get complete information about warranty terms and conditions. By providing consumers with a way of learning what warranty coverage is offered on a product *before* they buy, the Rule gives consumers a way to know what to expect if something goes wrong, and thus helps to increase customer satisfaction. Congress also wanted to ensure that consumers could compare warranty coverage before buying. By comparing, consumers can choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. Thus, the Pre-Sale Availability Rule promotes competition

1



on the basis of warranty coverage. By assuring that consumers can get warranty information, the Rule encourages sales promotion on the basis of warranty coverage and competition among companies to meet consumer preferences through various levels of warranty coverage.

4.      To comply with Magnuson-Moss's Pre-Sale Availability Rule, a retailer must make the terms of a product's written warranty "readily available for examination by the prospective buyer" by either (1) displaying the warranty "in close proximity" to the product or (2) placing signs around the store in prominent locations alerting the consumer that he or she may inspect product warranties upon request. This obligation extends to any product with a written warranty that costs more than $15. 16 C.F.R. § 702.3.

5.      Despite these obligations under federal law, Defendant does not provide consumers with access to written warranties, prior to sale, in a manner that complies with the Pre-Sale Availability Rule.

6.      Defendant's noncompliance has a self-serving motive: Defendant offers its own "protection plan" or extended warranty to consumers at the point of sale, which provide coverage that is duplicative of the free manufacturer's warranty that already comes with the product. If the consumer is not made aware of this warranty, or is prohibited from learning of the warranty's specific terms until after the point of sale, then he or she is more likely to buy Defendant's duplicative "protection plan."

7.      Plaintiff, individually and on behalf of all other similarly situated Arkansans, seeks injunctive and declaratory relief against Defendant for its violations of Magnuson-Moss. Specifically, Plaintiff seeks to require Defendant to provide Arkansas consumers

with pre-sale access to product warranties. As required by the Pre-Sale Availability Rule of Magnuson-Moss.

## PARTIES

8.      Plaintiff Sarah Leflar is a resident of Lonoke County, Arkansas.  On or about May 2022, Plaintiff purchased a power tool and separate lithium-ion battery and charging station (the "Products") from Defendant, which cost most than $15 and were subject to a warranty from the product's manufacturer.  In the course of purchasing these Products, Defendant did not make the Products' warranties available to Plaintiff, or alert Plaintiff to the option of reviewing the Products' warranties, prior to the point of sale in a manner compliant with the Pre-Sale Availability Rule.

9.      Defendant  Home Depot, Inc.  is a  retailer headquartered in Georgia. Defendant primarily  offers consumer goods, including goods over $15 that are subject to manufacturer's warranties.

## JURISDICTION AND VENUE

10.      Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

11.      Jurisdiction is proper in this Court because Plaintiff resides in Lonoke County, Arkansas.

12.      This Court has personal jurisdiction over Defendant because it purposefully directs its conduct at Arkansas, transacts business in Arkansas, has substantial aggregate contacts with Arkansas, engaged and is engaging in conduct that has and had a direct,

substantial, reasonably foreseeable, and intended effect of causing injury to persons in Arkansas, and purposely availed itself of the laws of Arkansas.

13.    Defendant's activities in Arkansas gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class. Defendant operates retail stores in Arkansas, selling products that are subject to the disclosure requirements of the Pre-Sale Availability Rule, but not complying with the Requirements of the Rule.

14.    In accordance with Ark. Code Ann. § 16-60-101, venue is proper in this Circuit because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this Circuit, and Defendant transacts business in this Circuit.

## EXCLUSIVE STATE COURT JURISDICTION
## PURSUANT TO 15 U.S.C. § 2310

15.    Exclusive jurisdiction for this Action lies with this Court, pursuant to 15 U.S.C. § 2310.

16.    Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief…in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

17.    However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(A)-(C).

4

18.     In this Action, Plaintiff solely seeks equitable and declaratory relief individually and on behalf of all members of the Class, in the form of Defendant complying with the Pre-Sale Availability Rule. Thus, neither Plaintiff nor any member of the putative Class asserts an individual claim for damages at all, much less one valued at $25 or greater. Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

19.     Further, Plaintiff Sarah Leflar is the only named plaintiff in this action. Because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

20.     Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

## COMMON FACTUAL ALLEGATIONS

### I.    Magnuson-Moss, the Pre-Sale Availability Rule, and Defendant's Non-Compliance

21.     Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[1] At its most fundamental, a warranty is a promise by the warrantor to stand behind its product. It is a statement about the integrity of the product and a commitment to correct problems if the product fails.[2]

---

[1] 15 U.S.C. §§ 2301, *et seq.*

[2] FTC, "Businessperson's Guide to Federal Warranty Law" (available at https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law)

22.    In passing Magnuson-Moss, Congress wanted to encourage sellers to provide written warranties to assure consumers and to foster competition for the best products. Although sellers are not required to provide written warranties, many consumers will be skeptical of products that do not have one.

23.    Magnuson-Moss creates multiple consumer protections related to warranties, and most deal with the substance of the warranties, themselves (i.e., what a warrantor must—and must not—include as a term or a representation). But Magnuson-Moss also recognizes the need of consumers to have access to warranties when evaluating whether or not to buy a given product, as the strength of the warranty is a meaningful data point when considering a new purchase. Consumers have a right to choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. As Congressman Moss stated in support of the law:

> One of the most important effects of this bill will be its ability to relieve consumer frustration by promoting understanding and providing meaningful remedies. This bill should also foster intelligent consumer decisions by making warranties understandable. At the same time, warranty competition should be fostered since consumers would be able to judge accurately the content and differences between warranties and competing consumer products.
>
> Perhaps one of the potentially most important and long range effects of this bill resides in its attempt to assure better product reliability. The bill…attempts to organize the rules of the warranty game in such a fashion to stimulate manufacturers, for competitive reasons, to produce more reliable products. This is accomplished using the rules of the marketplace by giving the consumer enough information and understanding about warranties so as to enable him to look

6

> to the warranty duration of a guaranteed product as an
> indicator of the product reliability.[3]

The Senate report accompanying the introduction of Magnuson-Moss further clarified the

need for and purpose of the law:

> When the use of a warranty in conjunction with the sale of a
> product first became commonplace, it was typically a
> concept that the contracting parties understood and
> bargained for, usually at arms length. One could decide
> whether or not to purchase a product with a warranty and
> bargain for that warranty accordingly. Since then, the
> relative bargaining power of those contracting for the
> purchase of consumer products has changed radically.
> Today, most consumers have little understanding of the
> frequently complex legal implications of warranties on
> consumer products. Typically, a consumer today cannot
> bargain with consumer product manufacturers or suppliers
> to obtain a warranty or to adjust the terms of a warranty
> voluntarily offered. Since almost all consumer products sold
> today are typically done so with a contract of adhesion, there
> is no bargaining power over contractual terms. [Magnuson-
> Moss] attempts to remedy some of the defects resulting from
> this gross inequality of bargaining power and return the sense
> of fair play to the warranty field that has been lost through
> the years as the organizational structure of our society has
> evolved. The warranty provisions of [Magnuson-Moss] are
> not only designed to make warranties understandable to
> consumers, but to redress the ill effects resulting from the
> imbalance which presently exists in the relative bargaining
> power of consumers and suppliers of consumer products.[4]

24.    Thus, Magnuson-Moss has the "Pre-Sale Availability Rule," which ensures

that consumers get complete information about warranty terms and conditions of a given

---

[3] Federal Register/Vol. 40, No. 251/60168
[4] Senate Comm. On Commerce, Report on S. 356, S. Rep. No. 93-151, 93d Cong., 1st Sess.
(1973), at 6.

product (of $15 or more), prior to purchase.[5] The Rule places distinct obligations both on

warrantors *and* retailers (like Defendant).

25.     Most relevant to the instant litigation, pursuant to the Rule, a "seller"[6] of

any consumer product costing more than $15 and subject to a written warranty

> shall make a text of the warranty readily available for
> examination by the prospective buyer by:
>
> **(1)** Displaying it in close proximity to the warranted
> product (including through electronic or other means...),
> or
>
> **(2)** Furnishing it upon request prior to sale (including
> through electronic or other means...) and placing signs
> reasonably calculated to elicit the prospective buyer's
> attention in prominent locations in the store or department
> advising such prospective buyers of the availability of
> warranties upon request.[7]

26.     While the Rule allows sellers to display or otherwise provide the text of a

warranty "through electronic...means," the FTC has made clear that it is not enough for

the seller merely to refer a customer to a product manufacturer's website.  In allowing for

the electronic presentment of warranty terms,

> Congress's intention...was not to disturb prospective
> purchasers' ability to obtain the full warranty terms at the
> point of sale, as envisioned by the Pre-Sale Availability Rule.
> While consumers with electronic devices and Internet
> connectivity may be able to review warranty terms at the
> point of sale by visiting the Web site that contains the

---

[5] *See,* 16 C.F.R. § 702.3.
[6] Defined as "any person who sells or offers for sale for purposes other than resale or use
in the ordinary course of the buyer's business any consumer product." 16 C.F.R. §
702.1(e).
[7] 16 C.F.R. § 702.3(a) ("Duties of seller").

warranty terms, not all consumers have such devices and
Internet connectivity.[8]

27.    Thus, all retailers, including Defendant, are obligated to have a mechanism
by which the full terms of a product's written warranty can be viewed by a consumer—
without said consumer resorting to his or her own Internet-enabled device—prior to the
point of sale.

28.    Defendant fails to satisfy this obligation.  Indeed, virtually all of the
products—if not every single product—sold in Defendant's stores are presented to the
consumer without any access to the product's warranty, pre-sale.  Instead, the first time
the consumer is able to view the warranty is upon opening the product's packaging, after
purchase.

29.    Defendant does not display product warranties in close proximity to the
relevant product; nor does Defendant place signs reasonably calculated to elicit the
prospective buyer's attention, in prominent locations in the store or department, advising
consumers of the availability of warranties upon request.  Indeed, Defendant is unable to
provide consumers with copies of warranties upon request, as it does not have said
warranties.  This is in direct violation of the Pre-Sale Availability Rule.  16 C.F.R. §
702.3(a).

## II.    The Rise of "Add On" Warranties Offered by Retailers Like Defendant

30.    There is a financial incentive for Defendant's failure to provide consumers
with product warranties.  Defendant, like many other retailers, makes a significant amount

---

[8] Federal Register/Vol. 81, No. 179/63666

9

of money by selling consumers "protection plans," or "extended warranties" for their products.

31.     At checkout, Defendant's employees are typically instructed to ask consumers whether they would like to purchase a warranty for their product (often, this prompt occurs automatically at the register upon a particular product's UPC code being scanned).[9]

32.     These plans are big business—according to a recent report, the global extended warranty industry generated $120.79 billion in 2019, and is projected to reach $169.82 billion by 2027, growing at a compound annual growth rate of 7.4% from 2020-2027.[10]

33.     However, these plans are also largely unnecessary, as they provide coverage that is duplicative of the given product's existing warranty, at least for the life of the manufacturer's warranty.[11]

---

[9] Beth Braverman, "Why You Should Steer Clear of Extended Warranties," Consumer Reports (Dec. 22, 2018) (available at https://www.consumerreports.org/extended-warranties/steer-clear-extended-warranties-a3095935951/) ("Two-thirds of in-store electronic shoppers and nearly three-quarters of appliance purchasers say that an associate has pitched one to them.")

[10] Yahoo, "Extended Warranty Market to Reach $169.82 Bn, Globally, by 2027 at 7.4% CAGR: Allied Market Research" (Jan. 24, 2022) (available at https://www.yahoo.com/now/extended-warranty-market-reach-169-083000210.html?guccounter=1).

[11] Beth Braverman, "Why You Should Steer Clear of Extended Warranties," Consumer Reports (Dec. 22, 2018) (available at https://www.consumerreports.org/extended-warranties/steer-clear-extended-warranties-a3095935951/) ("Two-thirds of in-store electronic shoppers and nearly three-quarters of appliance purchasers say that an associate has pitched one to them.")

34.    At present, Defendant partners with Allstate to offer protection plans to consumers, and thus is disincentivized from alerting consumers to the warranty that already comes with their product free of charge.  This makes Defendant's violation of the Pre-Sale Availability Rule all the more egregious.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

35.    Throughout the last several years, Plaintiff purchased products at one or more of Defendant's stores.  During this period, Plaintiff purchased at least one product costing more than $15 that was subject to a manufacturer's warranty.

36.    Two such products were the Products, which Plaintiff purchased from Defendant in May 2022 for more than $15.

37.    In the course of purchasing the Products, Defendant did not display product warranties in close proximity to the Products; nor did Defendant place signs reasonably calculated to elicit Plaintiff's attention, in prominent locations in the store or department, advising Plaintiff of the availability of warranties upon request.

38.    Accordingly, Plaintiff was unable to access any warranty associated with the Products until after the point of sale.

39.    Plaintiff cares about the substance of product warranties, and the terms of a written warranty would impact Plaintiff's purchasing decisions – *i.e.*, one product might be chosen over another if that product had a more expansive warranty.

40.    Further, Plaintiff anticipates buying new products costing over $15 that are subject to manufacturer warranties in the future, and would consider purchasing said

products from Defendant, but does not wish to have her rights under Magnuson-Moss

thwarted by Defendant's failure to comply with the Pre-Sale Availability Rule.

## CLASS ALLEGATIONS

41.    Plaintiff seeks class certification of the class set forth herein pursuant to

Arkansas Rule of Civil Procedure 23. This action satisfies the numerosity, commonality,

typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and (b).

42.    Plaintiff seeks certification of a Class defined as follows:

> All citizens of Arkansas who purchased one or more
> products from Defendant that cost over $15 and that were
> subject to a written warranty.

43.    Plaintiff reserves the right to modify or refine the Class definition based

upon discovery of new information or in order to accommodate any concerns of the Court.

44.    Excluded from the Class are Defendant, and Defendant's parents,

subsidiaries, affiliates, officers and directors, any entity in which any defendant has a

controlling interest, governmental entities, and all judges assigned to hear any aspect of this

litigation, as well as their immediate family members, and members of the staffs of the

judges to whom this case may be assigned.

45.    **Numerosity.** The Class is so numerous that joinder of individual members

herein is impracticable. The exact number of Class members, as herein identified and

described, is not known, but Plaintiff believes at least 36 Class members reside within the

State. *Stephens Prod. Co. v. Mainer*, 2019 Ark. 118, 5, 571 S.W.3d 905, 908 (2019)

12

(numerosity requirement satisfied for class consisting of 36 individuals).  Additionally, the identity of Class members can be readily determined upon review of records maintained by Defendant.

46.     **Commonality.** There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members, including but not limited to the following:

      i.   Whether Defendant's acts and practices complained of herein violate Magnuson-Moss; and

      ii.  the appropriate injunctive relief to ensure Defendant abides by the Pre-Sale Availability Rule.

47.     **Typicality.** Plaintiff's claims are typical of the claims of members of the proposed Class because, among other things, Plaintiff and members of the Class sustained similar injuries as a result of Defendant's uniform wrongful conduct and their legal claims arise from the same events and wrongful conduct by Defendant.

48.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the proposed Class.  Plaintiff's interests do not conflict with the interests of Class members and Plaintiff has retained counsel experienced in complex litigation to prosecute this case on behalf of the Class.

49.     **Predominance & Superiority.** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b).  Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other

available methods for the fair and efficient adjudication of this controversy. The individual

relief injunctive and declaratory available to an individual plaintiff is insufficient to make

litigation addressing Defendant's conduct economically feasible in the absence of the class

action procedure. Individualized litigation also presents a potential for inconsistent or

contradictory judgments, and increases the delay and expense presented by the complex

legal and factual issues of the case to all parties and the court system. By contrast, the class

action device presents far fewer management difficulties and provides the benefits of a

single adjudication, economy of scale, and comprehensive supervision by a single court.

50.     **Final Declaratory or Injunctive Relief.**   Plaintiff also satisfies the

requirements for maintaining a class seeking declaratory and/or injunctive relief.

Defendant has acted or refused to act on grounds that apply generally to the proposed

Class, making final declaratory or injunctive relief appropriate with respect to the proposed

Class as a whole.

### CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.*)**

51.     Plaintiff incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

52.     Plaintiff and Class members are "consumers" as defined in MMWA, 15

U.S.C. § 2301(3).

53.     Defendant is a "seller" as defined in MMWA, 16 C.F.R. § 702.1(e).

54.    Defendant sells products with warranties that are "written warranties" as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

55.    Defendant sells products that are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1); 16 C.F.R. § 702.1(b).

56.    Consistent with, *inter alia*, 16 C.F.R. § 702.3, as a seller of consumer products with written warranties, for all products costing more than $15 Defendant must either display product warranties in close proximity to the relevant product, or else place signs reasonably calculated to elicit the prospective buyer's attention, in prominent locations in the store or department, advising consumers of the availability of warranties upon request. 16 C.F.R. § 702.3(a). In direct violation of Magnuson-Moss's Pre-Sale Availability Rule, Defendant does neither of these things.

57.    Because Plaintiff and the Class members have purchased, would like to, and are likely to purchase products from Defendant over $15, Plaintiff and Class members are entitled to injunctive relief and corresponding declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a.    Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b.    Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c.    Entered judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

       d.    Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

       e.    Grant such other legal and equitable relief as the Court may deem appropriate.


Dated: June 23, 2022            Respectfully Submitted,

                            */s/ David Slade*
                            _____

                            David Slade (ABN 2013143)
                            slade@wh.law
                            Brandon Haubert (ABN 2013137)
                            brandon@wh.law
                            wh LAW
                            1 Riverfront Place, Suite 745
                            Tel: (501) 891-6000
                            Fax: (501) 222-3027

                            Jerry Kelly (ABN 84085)
                            jkelly@kellylawfirm.net
                            KELLY LAW FIRM, PA
                            118 N. Center
                            P. O. Box 500
                            Lonoke, AR 72086
                            Phone:  501-676-5770
                            Fax:  501.676.7807


                            *Attorneys for Plaintiff and the proposed Classes*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: June 23, 2022                    Respectfully Submitted,

                                        */s/ David Slade*
                                        _____

                                        David Slade (ABN 2013143)
                                        slade@wh.law
                                        Brandon Haubert (ABN 2013137)
                                        brandon@wh.law
                                        wh LAW
                                        1 Riverfront Place, Suite 745
                                        Tel: (501) 891-6000
                                        Fax: (501) 222-3027

                                        Jerry Kelly (ABN 84085)
                                        jkelly@kellylawfirm.net
                                        KELLY LAW FIRM, PA
                                        118 N. Center
                                        P. O. Box 500
                                        Lonoke, AR 72086
                                        Phone: 501-676-5770
                                        Fax: 501.676.7807


                                        *Attorneys for Plaintiff and the Proposed Classes*